Gary Jay Kaufman, Esq.  (State Bar No. 92759)
gary@kaufmanlawgroupla.com
Colin Hardacre, Esq.  (State Bar No. 250915)
colin@kaufmanlawgroupla.com
Natasha L. Hill, Esq.  (State Bar No. 249787)
natasha@kaufmanlawgroupla.com
THE KAUFMAN LAW GROUP
1901 Avenue of the Stars, Suite 1010
Los Angeles, California 90067
Telephone:  (310) 286-2202
Facsimile:   (310) 712-0023

Attorneys for Plaintiffs Todd Blatt
and TCB Partnership

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| TODD BLATT, an individual, and TCB PARTNERSHIP, a California partnership, <br><br>           Plaintiffs, <br><br>   v. <br><br> NOHO, INC., a Wyoming corporation, DOLCE BEVUTO, INC., a Nevada corporation, and JOHN GEORGE GRDINA, aka JAY GRDINA, an individual, <br><br>           Defendants. | Case No. 2:14-cv-06666 <br><br> **COMPLAINT FOR:** <br><br> 1. **BREACH OF JOINT VENTURE / PARTNERSHIP AGREEMENT** <br><br> 2. **BREACH OF IMPLIED JOINT VENTURE / PARTNERSHIP AGREEMENT** <br><br> 3. **BREACH OF FIDUCIARY DUTY OWED TO JOINT VENTURERS / PARTNERS** <br><br> 4. **CONSTRUCTIVE FRAUD** <br><br> 5. **BREACH OF CONTRACT – DISTRIBUTION AGREEMENT** <br><br> 6. **BREACH OF CONTRACT – MANUFACTURING AGREEMENT** |

7. **BREACH OF IMPLIED CONTRACT**

8. **PROMISSORY ESTOPPEL**

9. **FRAUDULENT INDUCEMENT**

10. **PROMISSORY FRAUD**

11. **UNFAIR COMPETITION – VIOLATION OF BUS. & PROF. CODE §§ 17200 ET SEQ.**

12. **QUANTUM MERUIT**

13. **ACCOUNTING**

**DEMAND FOR JURY TRIAL**

Plaintiffs Todd Blatt and TCB Partnership ("TCB") (collectively, "Plaintiffs"), by and through their counsel, The Kaufman Law Group, allege and aver the following for their complaint against NOHO, Inc. ("NOHO"), Dolce Bevuto, Inc. ("Dolce"), and John George Grdina, also known as Jay Grdina (collectively, "Defendants"), as follows:

## I.     INTRODUCTION

1.     Through their substantial investment of blood, sweat, tears and capital, Plaintiffs built NOHO into a successful, publicly traded company.  In return, NOHO and its CEO, pornographic actor turned entrepreneur, Jay Grdina, rewarded Plaintiffs with dishonesty and broken promises.  Plaintiffs have been cheated out of their rightful interest in NOHO and Defendants must now answer for their actions.

2.     NOHO is the producer of two premium dietary supplement beverages designed to prevent the symptoms associated with a hangover: 1) NOHO "The Hangover Defense," a 2 oz. shot; and 2) NOHO Gold "Premium Lifestyle Beverage," an 8.4 oz. can.

3.     In or about March 2011, Blatt met with Grdina, who had contacted him with an offer to partner on a new hangover prevention drink called NOHO.  Blatt and Grdina had a long-standing relationship for over 20 years and Grdina was familiar with Blatt's foreign sales expertise from their prior work experience together.  From in or about 2004 through 2007, Blatt worked with Grdina's former company Club Jenna, Inc. (now owned by Playboy Enterprises) as its international sales agent.  Grdina expressed to Blatt that he needed Blatt's foreign sales expertise to successfully build NOHO into a worldwide brand and establish a platform to take it public in the United States.

4.     During their meeting, Grdina and Blatt came to a firm deal whereby Blatt would receive a 10% founders' interest in NOHO.  In exchange, Blatt would use his connections, skill and expertise to direct and manage NOHO's foreign licensing and distribution and build NOHO into a successful brand that could be taken public in the United States (the "Joint Venture Agreement").  Grdina represented that Blatt's 10% founders' interest would be of the same type or class as Grdina's interest because he

knew that Blatt would have to necessarily forego other business opportunities in order to make NOHO his number one priority.

5.     It was further agreed that Blatt would bring in his existing company TCB as NOHO's exclusive foreign distributor. At the time, Grdina was operating NOHO through a company called Dolce Bevuto, LLC, a California limited liability company ("Dolce LLC").

6.     On June 1, 2011, Blatt's company, TCB, and Grdina's company, Dolce, entered into a written distribution agreement granting TCB the exclusive right to license and distribute all NOHO branded products in all territories worldwide, except the U.S. and Canada.  The distribution agreement was for an initial term of three years, with three successive option periods of three years each, and provided TCB a 15% percent commission on all international sales, a 10% commission for Canada sales, and 20% of all foreign licensing for manufacturing (not final products) (hereinafter the "Distribution Agreement").

7.     Shortly after entering into the Distribution Agreement, Grdina requested that TCB take on the additional roles of manufacturing NOHO's products and filling domestic orders.  Grdina did not have NOHO set up to handle the manufacturing demands of its growing domestic and international distribution and did not have adequate facilities to fill domestic orders.

8.     Plaintiffs agreed that TCB would also handle manufacturing and domestic distribution, in addition to international distribution.  Defendants agreed to pay for all manufacturing and domestic distribution costs and to compensate TCB's warehouse staff for their additional labor as soon as its cash flow improved (hereinafter the "Manufacturing Agreement").

9.     Plaintiffs focused all of their attention and resources on securing foreign licensing and distribution deals for NOHO, expending significant time, labor and money to finance foreign sales operations.  In just over two years, Plaintiffs secured key foreign licensing and distribution deals in over nine countries, including Canada,

Asia, Europe, Australia and Mexico, quickly expanding NOHO's platform across the globe and setting the table to take NOHO public.

10.     From in or about March 2011 through October 2013, Blatt directed and managed NOHO's foreign licensing and distribution and TCB acted as NOHO's exclusive distributor in all territories, except the U.S. and Canada.  TCB also exclusively manufactured every can of NOHO sold domestically and internationally through in or about February 2013 through its warehouse in Los Angeles County.  In just over two years, Blatt's international sales strategy took the NOHO enterprise from a domestic product distributed primarily in California and Arizona, to an international premium lifestyle beverage, today the world's #1 selling hangover prevention supplier.  Plaintiffs continued to perform and invest significant effort into building NOHO, in reliance on the promised founders' interest.

11.     After nine months of diligent work, Blatt had not yet received his promised 10% founders' interest.  In or about February 2012, Blatt inquired with Grdina as to when he could expect his shares to be issued.  Grdina informed him, for the first time, that instead of the 10% founders' interest, he would give Blatt a 5% non-dilutable interest.  Grdina assured Blatt that he was receiving the same type / class of shares as Grdina had and gave Blatt the option of either a 5% non-dilutable interest or a 10% dilutable founders' interest.  Believing the 5% non-dilutable interest was favorable, Blatt agreed to accept it and instructed that his shares be issued to TCB.

12.     On March 26, 2012, TCB was issued 2,485,733 units of Dolce LLC, purportedly representing a 5% non-dilutable interest in the NOHO venture (the "Dolce LLC Certificate").

13.     While Plaintiffs dutifully handled all of NOHO's manufacturing and distribution, they were completely unaware that Defendants were secretly engaged in a scheme to deprive them of their interests in NOHO once it went public.  Defendants continued to make flagrant representations about the increased value of NOHO to Plaintiffs, including statements by NOHO's director Sean Stephenson on March 25,

2013 that Plaintiffs' stock in the NOHO venture was worth **"$1 million on paper**."  In reliance on the parties' agreements and Defendants' repeated assurances, Plaintiffs continued to expend time, labor and money for the benefit of the NOHO venture and to maintain NOHO's relationships with manufacturing vendors and foreign distributors.

14.    In or about May of 2013, Plaintiffs learned that Defendants had dissolved Dolce Bevuto, LLC, transferring all of its assets to a newly formed Nevada corporation, Dolce, and that 100% of Dolce had been acquired by NOHO, Inc.  Plaintiffs were not notified of the dissolution, transfer or acquisition and were not reissued shares in either Dolce or NOHO following the merger.

15.    When Plaintiffs inquired with Grdina and Stephenson about the merger and when their 5% non-dilutable interest in NOHO would be issued, Plaintiffs were informed that their 5% interest was no longer non-dilutable and that everyone's interests were diluted when Dolce and NOHO merged, even Grdina's interest.

16.    Defendants further instructed that before any shares in NOHO could be issued to Plaintiffs they would have to a) sign a new "lock up" agreement with NOHO for their 5% "dilutable" interest and b) enter into a new "non-exclusive" foreign distribution agreement with NOHO.  If they refused, Plaintiffs were informed that their interests would be cancelled and the Distribution Agreement would be terminated.  Plaintiffs were given a moment's notice to accept Defendants new terms and when they failed to do so in the unreasonable timeframe demanded, Defendants cancelled their shares in NOHO and wrongfully terminated the Distribution Agreement.

17.    As a result of their wrongful and malicious conduct, Defendants not only defrauded Plaintiffs and misappropriated the value of their hard work and expertise, reaping huge financial rewards and lucrative compensation packages from their scheme, but they seriously tarnished Plaintiffs' reputation and business relationships in the process.

18.    Upon information and belief based on NOHO's SEC filings, since 2012, Grdina has enjoyed a base salary of $240,000 a year, plus annual equity compensation,

a $21,000 car and fuel allowance, a $4,200 health insurance allowance and performance based bonuses.  He apparently received executive compensation valued at over $375k in both 2012 and 2013.  By 2012, NOHO's director Stephenson was enjoying a base salary of $100,000 and had already received equity compensation of over 9 million shares of stock.  He currently has a base salary of $135,000, plus annual equity compensation.  Yet, to date, despite their significant, undeniable contributions, Plaintiffs have been stripped of their rights and interests in NOHO and have not received what Defendants' promised.

19.     In this lawsuit, Plaintiffs seek the value of their 5% non-dilutable interest in NOHO, their unpaid and projected commissions and staff compensation – a sum to be proven at trial, but that is believed to be in excess of $5 million dollars based on the value of NOHO's shares and past sales – as well as compensatory and punitive damages and equitable relief from Defendants for their deliberate and malicious conduct.

## II.     JURISDICTION AND VENUE

20.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(1).  Plaintiff Todd Blatt is a citizen of the State of California.  Plaintiff TCB is a California partnership and all of its members are citizens of the State of California.  Defendant NOHO is a corporation organized and existing under the laws of the State of Wyoming.  Defendant Dolce is a corporation organized and existing under the laws of the State of Nevada.  Defendant Grdina is a citizen of the State of Arizona.  The amount in controversy far exceeds $75,000, exclusive of interests and costs.

21.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to this action have occurred and/or will occur in this District, including where the Joint Venture Agreement, Distribution Agreement and Manufacturing Agreement were entered into and performed either in whole or in part.

### III.   PARTIES

22.     Plaintiff Todd Blatt is, and at all times herein mentioned was, an individual residing in Ventura County, California.

23.     Plaintiff TCB is, and at all times herein mentioned was, a California partnership in good standing, with its principal place of business in Los Angeles County, California.  Todd Blatt and his wife, Christine Blatt each own a 50% partnership interest in TCB.  Christine Blatt is, and at all times herein mentioned was, an individual residing in Ventura County, California.

24.     Plaintiffs are informed and believe, and on that basis allege, that NOHO, Inc., formerly RealEstate Pathways, Inc., is, and at all times herein mentioned was, a Wyoming corporation.  Plaintiffs are informed and believe and on that basis allege that NOHO's principal place of business is in Scottsdale, Arizona.  Through a series of mergers, acquisitions, and restructurings, NOHO is a successor in liability and has acquired, assumed, and incurred all liabilities and obligations of its predecessors, selling companies, and/or assignors involved in the claims at issue herein, including its wholly owned subsidiary Dolce Bevuto, Inc., a Nevada corporation and Dolce Bevuto, LLC, a dissolved California limited liability company.

25.     Plaintiffs are informed and believe, and on that basis allege, that Dolce Bevuto Inc., is and at all times herein mentioned was, a Nevada corporation and the successor in interest to Dolce Bevuto, LLC, a dissolved California limited liability company.  Plaintiffs are informed and believe and on that basis allege that Dolce's principal place of business is in Scottsdale, Arizona.

26.     Plaintiffs are informed and believe and on that basis allege that Grdina is, and at all times herein mentioned was, an individual residing in Scottsdale, Arizona.

27.     Plaintiffs are further informed and believe and on that basis allege that there exists, and at all times herein mentioned there existed, a unity of interest and ownership between NOHO, Dolce and Grdina, and each of them, such that any individuality and separateness between NOHO, Dolce and Grdina, and each of them,

has ceased to exist and NOHO, Dolce and Grdina are the alter egos of each other. Plaintiffs are informed and believe and on that basis allege that Grdina has dominated and controlled and continues to dominate and control Dolce and NOHO; that Grdina makes decisions on all matters of importance for Dolce and NOHO; that Grdina has failed to follow proper corporate formalities; and that Dolce and NOHO exist merely to do Grdina's will.  In addition, Plaintiffs are informed and believe and on that basis allege that NOHO completely dominates and controls Dolce to such an extent that they operate as a single entity, including sharing the same or substantially the same officers and directors.  Adherence to the fiction of the separate existence of NOHO, Dolce and Grdina and each of them as distinct from the other would permit an abuse of the corporate privilege and would sanction fraud and promote an injustice on Plaintiffs.

## IV.   GENERAL ALLEGATIONS

**A.   <u>NOHO – The Hangover Defense.</u>**

28.   NOHO produces dietary supplement beverages specifically formulated to help fortify the body and protect it from the adverse effects of drinking alcohol.  It is specifically designed to prevent the symptoms associated with a hangover and is one of the first companies to market a liquid-based hangover protection product.  NOHO currently produces two premium dietary supplement beverages, NOHO "The Hangover Defense," a 2 oz. shot and NOHO Gold "Premium Lifestyle Beverage," an 8.4 oz. can and has coined a new category of beverages "Premium Lifestyle Beverages."  Today, NOHO is the world's #1 selling hangover prevention supplier.

**B.   <u>Blatt's Foreign Sales Expertise And Prior Work With Grdina.</u>**

29.   Blatt has over 25 years of experience in foreign licensing and distribution. Through his former company, Antigua Pictures, Inc., Blatt staked his claim as the alpha dog of foreign licensing and distribution in the adult entertainment industry.  His expertise in foreign sales garnered him positions with industry heavyweights such as Vivid Entertainment Group, Teravision and Grdina's former company, Club Jenna, Inc. (now owned by Playboy Enterprises).

30.     Blatt and Grdina first met over 20 years ago.  At the time, Grdina was a producer, actor and investor in adult films.  In or about 2004, Grdina's former company Club Jenna, Inc. hired Blatt as its international licensing agent, resulting in a significant boost in foreign sales and Club Jenna's worldwide brand recognition.

**C.    Blatt Accepts Grdina's Offer To Partner On The NOHO Venture.**

31.     In or about March 2011, Grdina approached Blatt in Los Angeles County with an offer to partner with Grdina on his new hangover prevention drink, NOHO. Grdina represented that he needed Blatt's foreign sales expertise and connections in order for his plan to take NOHO public to succeed and that he believed Blatt was the right person for the job.  Grdina was not in a position to offer Blatt a salaried position at this early stage of operations.

32.     Therefore, Grdina and Blatt entered into the oral Joint Venture Agreement whereby in exchange for a 10% founders' interest, Blatt would use his connections, skill and expertise to direct and manage NOHO's foreign licensing and distribution and build NOHO into a successful brand that could be taken public in the United States. Grdina represented that Blatt's 10% founders' interest would be of the same type or class as Grdina's interest because he knew that Blatt would have to necessarily forego other business opportunities in order to make  NOHO his number one priority.

33.     In furtherance of the joint venture / partnership, and for NOHO to meet expected foreign sales demands, it was also agreed that NOHO would contract with Blatt's existing company with warehouse space in Los Angeles County, TCB, to handle all of NOHO's foreign distribution operations.

**D.    TCB And Dolce's Exclusive Distribution Agreement.**

34.     On June 1, 2011, TCB and Dolce entered into the Distribution Agreement. Attached hereto as Exhibit A is a true and correct copy of the Distribution Agreement. Therein it provides that TCB will have the exclusive right to "distribute, sell, license and otherwise deal in and exploit the use of all of the NOHO Branded (sic) line of products (Products) produced or owned by [Dolce], now and in the future in all

territories worldwide, including but not limited to, distribution of all public and private facilities, including, without limitation, facilities for airline, ship, rail, hotel, and incarceration facilities…Excluding United States of America and Canada for NOHO drinks and all of its affiliated products." (Exhibit A, Article 1, ¶1).

35.     In return, TCB was to receive a commission equal to 10% for Canadian sales, 15% of all other foreign sales, and 20% of all foreign licensing deals with manufacturers, not for the purchase of final goods.  (Exhibit A, Article 4, ¶1).  The Distribution Agreement also provided that TCB would use its best efforts to perform such services, duties and acts necessary to promote and distribute NOHO products. (Exhibit A, Article 2, ¶2).

36.     The Distribution Agreement was for an initial term of three years, with three consecutive option periods of three years each and was terminable only for cause if the defaulting party failed to cure its default within 45 days of receiving written notice of default.  (Exhibit A, Article 6, ¶¶ 1-2).

37.     The Distribution Agreement also provided that it "shall be automatically transferred to, assumed by and enforceable against any person or entity that purchases, takes or receives all or substantially all of the business of Dolce or NOHO, its stock or ownership interests and/or the Dolce/NOHO drink and all its products."  (Exhibit A, Article 7, ¶4).

**E.     Plaintiffs' Take On NOHO's Manufacturing And Domestic Distribution.**

38.     Shortly after entering into the Distribution Agreement, Grdina requested that TCB take on the additional roles of manufacturing NOHO's products and filling domestic orders.  Grdina did not have NOHO set up to handle the manufacturing demands of its growing domestic and international sales and did not have adequate facilities to fill domestic orders.  Plaintiffs agreed in the spirit of teamwork (and appreciating that they could not sell product that NOHO was unable to manufacture) that TCB would handle all manufacturing and both domestic and international distribution though its warehouses in Los Angeles County.  Defendants orally agreed to

1  pay for all manufacturing and domestic distribution costs and to reasonably compensate

2  TCB's warehouse staff for their additional labor.  In the beginning, during 2011,

3  NOHO did not have the cash flow to pay TCB's warehouse staff any additional

4  compensation for manufacturing and domestic distribution.  However, in 2012,

5  Defendants agreed to pay TCB $2,000 per month.  In 2013, Defendants agreed to pay

6  TCB $8,000 per month (hereinafter the "Manufacturing Agreement").  For over two

7  years, Plaintiffs diligently pursued the goals of the joint venture / partnership by

8  focusing all of their attention and resources on NOHO's foreign sales operations.

9  **F.    Plaintiffs Successfully Secure Foreign Distribution Deals In Nine Countries.**

10        39.    Between June 2011 and October 2013, Plaintiffs worked diligently to

11 secure key foreign distribution deals in Australia, Austria, Canada, Germany, Hong

12 Kong, Ireland, Mexico, the Netherlands and Sweden (Scandinavia).  Plaintiffs used

13 their contacts and connections to negotiate and close these lucrative foreign deals,

14 quickly expanding NOHO's distribution and brand recognition across the globe.  All of

15 the foreign distribution deals secured by Plaintiffs required foreign distributors to pay

16 in full for their product before it shipped, significantly improving NOHO's cash flow.

17        40.    On February 1, 2012, a press release on PRnewswire.com titled "NOHO –

18 The Hangover Defense Takes the World by Storm," announced NOHO's rapid,

19 continuous international growth and expanding distribution throughout Europe, UK,

20 Brazil and Australia.  Grdina was quoted as saying "*I love seeing the global recognition*

21 *and demand for our brand...**Distributing internationally was something we always felt***

22 ***was a necessity and it is a great accomplishment to implement that goal**...The desire*

23 *for our product has increased dramatically and we could not be more ecstatic to*

24 *continue our expansion throughout the world.*"  Blatt, identified as the Director of Sales

25 for NOHO, was quoted as saying "*To be able to make our product available across the*

26 *globe so quickly after our national distribution reiterates how powerful NOHO has*

27 *become.  **In such a rapid amount of time, breaking into the international market is a***

28 / / /

Complaint - 12

*success we are proud to have accomplished so soon*."  Attached hereto as Exhibit B is a true and correct copy of the PRnewswire.com article.

**G.    Plaintiffs Receive The Dolce LLC Certificate Purportedly Representing Their 5% Non-Dilutable Interest In NOHO.**

41.    After nine months of diligent work and significant growth, Blatt was still not in receipt of his promised 10% founders' interest.  In or about early February 2012, when he inquired as to when he could expect his shares to be issued, Grdina informed him that instead of a 10% founders' interest that could be diluted when the company went public, Blatt would receive a 5% non-dilutable interest in NOHO.  Grdina reassured Blatt that he was still receiving the same type / class of shares that Grdina had and gave Blatt the option of the 5% non-dilutable interest or the 10% dilutable founders' interest.  Believing the 5% non-dilutable interest was favorable, Blatt agreed to accept it and instructed that his shares be issued to TCB.

42.    On March 26, 2012, TCB was issued the Dolce LLC Certificate for 2,485,733 units of Dolce Bevuto, LLC, purportedly representing a 5% non-dilutable interest in the NOHO venture.  Attached hereto as Exhibit C is a true and correct copy of the Dolce LLC Certificate.

**H.    Defendants' Unexplained Manufacturing Delays Slow NOHO's Sales.**

43.    Despite foreign distributors pre-paying for product in full pursuant to the deals secured by Plaintiffs, Defendants repeatedly failed to timely pay manufacturing vendors in order to ensure sufficient product was available to fill foreign distributors' orders and meet shipping deadlines.  These manufacturing issues caused serious delays, disrupting relationships with foreign distributors and making it nearly impossible to take new orders.  Defendants were also late on paying TCB its sales commissions under the Distribution Agreement and staff compensation under the Manufacturing Agreement.  Plaintiffs' attempts to follow the money coming in from pre-paid foreign sales were rebuffed by Defendants' circular position that they could not cover manufacturing expenses due to a lack of cash flow from slowing sales.  Of course, this

excuse did not explain where payments from foreign distributors were going if not to manufacturing product to fill their orders.

44.     By early 2013, Defendants' persistent and inexcusable failures to pay for manufacturing costs eventually wore down Plaintiffs' reputation with foreign distributors who were understandably not sympathetic having pre-paid for their product.  On March 18, 2013, when confronted about manufacturing and payment delays, Grdina threatened that he would terminate TCB's Distribution Agreement if sales did not pick up, essentially ignoring the predicament Plaintiffs were in of not being able to fill orders due to Defendants' failure to pay manufacturing bills.

45.     In order to stave off threats of litigation and salvage NOHO's business relationships with foreign distributors, Plaintiffs took matters into their own hands and began collecting foreign distributors' payments directly and paying NOHO's manufacturers' bills themselves so that they could ensure there was sufficient product to timely fill orders.  It was further agreed that TCB would no longer be responsible for domestic manufacturing and distribution and would focus solely on foreign manufacturing and distribution.

46.     During this time, Defendants continued to make flagrant representations about the increasing value of NOHO and Plaintiffs' interest, including on March 25, 2013 when Stephenson informed Plaintiffs that their stock in NOHO was worth ***"$1 million on paper right now.***"  In reliance on the parties' agreements and Grdina and Stephenson's repeated assurances, Plaintiffs continued to expend time, labor and money on foreign distribution.  Plaintiffs were completely unaware that Defendants were secretly engaged in a scheme to deprive them of their interests in NOHO once it went public.

## I.     Defendants' Secret Transfer Of Assets And Merger Of Dolce And NOHO.

47.     Upon information and belief, NOHO was formerly RealEstate Pathways, Inc., a Wyoming Corporation ("REP") formed by Grdina on September 30, 2011 for the purpose of conducting real estate business.  REP's name was changed to NOHO,

Inc., and its operations redirected to the production and sale of NOHO products. According to Secretary of State and SEC filings by Defendants:

   a. On January 4, 2014, REP entered into a Distributor Agreement with Dolce Bevuto LLC whereby REP obtained the non-exclusive right to distribute NOHO products for one year and to use NOHO's trademarks in connection therewith.

   b. On January 9, 2013, REP changed its name to NOHO, Inc.

   c. On February 2, 2013, Grdina formed Dolce in Nevada and transferred all of Dolce Bevuto, LLC's assets to Dolce.

   d. On February 12, 2013, a certificate of dissolution for Dolce Bevuto, LLC was filed by Grdina.

   e. On March 18, 2013, NOHO and Dolce enter into an Acquisition Agreement and Plan of Merger.

   f. On April 1, 2013, the planned merger closed and NOHO acquired 100% of Dolce and Dolce is now a wholly owned subsidiary of NOHO.  In exchange for 100% of Dolce's shares, NOHO issued 12,713,763 shares of its common stock to various individuals and entities, not including Plaintiffs.

   g. Since 2012, Grdina has enjoyed a base salary of $240,000 or more a year, plus annual equity compensation, a $21,000 car and fuel allowance, a $4,200 health insurance allowance and performance based bonuses.  He apparently received executive compensation valued at over $375k in both 2012 and 2013.  By 2012, Stephenson's base salary was $100,000 and he had received equity compensation of over 9 million shares of stock.  Stephenson currently enjoys a base salary of $135,000, plus annual equity compensation.

48. Plaintiffs received no prior notice of the above transactions and were never issued stock in either Dolce or NOHO, the clear successors in interest to the dissolved Dolce Bevuto, LLC.

49. In or about April 2013, after months of being kept in the dark, Blatt was finally apprised of the dissolution, transfer and merger.  He was again reassured by

Defendants that his interest in the dissolved Dolce Bevuto, LLC had been appropriately converted to NOHO and that he would be issued stock in the new NOHO entity as agreed.  However, Plaintiffs were never issued NOHO stock.

**J.     Defendants' Wrongful Termination Of The Distribution Agreement.**

50.     In or about May 2013, Grdina contacted Plaintiffs about restructuring the Distribution Agreement and entering into a non-exclusive agreement for international representation, claiming that it did not appear that foreign sales were a full focus of Plaintiffs' time and that sales were "non-existent."  In response, Plaintiffs informed Grdina that new territories were underway and that they had tried updating him regarding foreign sales with no response.  Plaintiffs again inquired about the issuance of their 5% non-dilutable shares in NOHO.  Grdina responded, informing Blatt for the first time that non-dilutable shares did not exist and that everyone's shares, including Grdina's, had been diluted when Dolce and NOHO merged.  Grdina further stated that a "lock up" agreement for the 5% dilutable interest had to be signed before any NOHO shares could issue to Plaintiffs.

51.     Stunned by Grdina's response, Plaintiffs reminded Grdina that Blatt was given a choice between a 5% non-dilutable interest and the 10% dilutable founders' interest originally promised.  Grdina took the position that Blatt never had a 10% interest, completely ignoring their initial agreement and their renegotiation to 5% based on Grdina's representation that it would be non-dilutable.  At this point, Plaintiffs realized they could no longer trust Grdina to keep his word and refused to enter into any new agreements with Defendants or to restructure their existing agreements.  Plaintiffs continued to demand the 5% non-dilutable interest and refused to walk away without what was promised.

52.     In or about September 2013, Blatt again demanded his 5% non-dilutable interest in NOHO.  Blatt was informed that Plaintiffs would receive 384,256 shares of NOHO stock, which included additional shares in consideration of the dilution that occurred, provided that they: a) sign the previously mentioned "lock up" agreement for

their 5% dilutable interest; and b) send in the Dolce LLC Certificate previously issued. Blatt reasserted his right to either the 5% non-dilutable interest he agreed to or the 10% dilutable founders' interest he was originally promised.  Defendants took the position that everyone's shares had to be diluted in order for NOHO to go public, essentially telling Plaintiffs that the dilution had already occurred and there was nothing anyone could do about it.  Fed up with Defendants' misrepresentations and underhanded dealings, Plaintiffs refused to sign any new agreements or to send in the Dolce LLC Certificate unless they received what was promised.

53.    On October 14, 2013, Grdina again contacted Plaintiffs about restricting the Distribution Agreement, and provided Plaintiffs with a new non-exclusive distribution agreement fashioned as a "broker" agreement, in which Plaintiffs would act as a broker to introduce NOHO to prospective foreign licensees and manage their accounts (the "Broker Agreement.").  Plaintiffs were given a moment's notice to accept the new terms in the Broker Agreement and were informed that if they did not sign "[Defendants] will just revoke those shares," apparently referring to the 384,256 shares Defendants previously represented Plaintiffs were to receive.

54.    On October 16, 2013, in response to Grdina's threats, Plaintiffs took the position that the Distribution Agreement was "perfectly valid" and there was "no reason whatsoever to change or replace it."  Blatt again demanded his 5% non-dilutable interest, informing Grdina that he was in the process of investigating.

55.    That same day, Grdina responded reiterating his threat to revoke Plaintiffs' shares if they did not sign the Broker Agreement, stating "No problem.  I will terminate for non-performance, you will have that over tomorrow.  Investigate alllll [sic] you want."

56.    Days later, on October 24, 2013, true to Grdina's threat, Defendants' counsel sent notice of termination of the Distribution Agreement alleging, for the first time, that Plaintiffs had breached the Distribution Agreement by failing to enforce NOHO's agreements with foreign distributors that were in breach.

57.     Plaintiffs continued to stand firm in their position that the Distribution Agreement was valid and enforceable and that Defendants' termination was merely a pretext for Defendants' nefarious scheme to wipe out Plaintiffs promised interest and rights in NOHO.  Plaintiffs further challenged Defendants' position that TCB was in breach, pointing out that the Distribution Agreement did not obligate TCB to enforce NOHO's foreign distribution agreements and, even if it did, TCB had no means by which to accomplish such a feat since TCB was not a signatory to those agreements and would, therefore, lack standing to enforce the agreements on NOHO's behalf.

58.     In a letter of December 10, 2013, Defendants took another preposterous position – that the Distribution Agreement that the parties performed under for over two years was suddenly too vague, indefinite and illusory to enforce.  Defendants advised that the Distribution Agreement was terminated effective December 10, 2013 based on Plaintiffs' failure to cure the alleged breach within the 45 day contractual cure period.

59.     Following the wrongful termination of the Distribution Agreement, Plaintiffs received threats of litigation from NOHO's foreign distributors due to late shipments, threatening that Plaintiffs and NOHO would both be on the hook for damages.  Apparently, Defendants have continued their practice of collecting payments from foreign distributors and failing to timely deliver product in accordance with their agreements.  These poor business practices have seriously damaged Plaintiffs' foreign business relationships and their reputation in the industry.

60.     As a result of Defendants' fraudulent, wrongful and malicious conduct, Defendants have not only misappropriated the value of Plaintiffs hard work and expertise, reaping huge financial rewards and lucrative compensation packages for themselves, but have seriously tarnished Plaintiffs' reputation and business relationships in the process.

/ / /

/ / /

# FIRST CLAIM FOR RELIEF

## BREACH OF JOINT VENTURE / PARTNERSHIP AGREEMENT

(Against All Defendants)

61.     Plaintiffs incorporate herein by reference paragraphs 1 through 60 of this complaint as set forth fully herein.

62.     As set forth herein above, in or about March 2011, Blatt and Defendants entered into the valid oral Joint Venture Agreement for the purpose of directing and managing NOHO's foreign licensing and distribution and building NOHO into a successful brand in order to take it public in the United States.

63.     At all times, Blatt performed all conditions, covenants, and promises required to be performed on his part in accordance with the terms of the Joint Venture Agreement, except to the extent his performance was excused or otherwise made impossible.

64.     Defendants breached the Joint Venture Agreement by, among other things:

      a.     Failing to include Blatt in the dissolution, transfer and merger of the joint venture / partnership first to Dolce and then to NOHO;

      b.     Interfering in Blatt's ability to manage and direct foreign sales as agreed;

      c.     Misappropriating Blatt's contacts and strategies and reaping the benefits of Blatt's hard work and expertise for Defendants' benefit;

      d.     Repudiating the existence of the joint venture / partnership, depriving Blatt of his rightful interest in the joint venture / partnership; and

      e.     Failing to issue and wrongfully cancelling Blatt's shares in NOHO.

65.     As a direct and proximate cause of Defendants' breaches of the Joint Venture Agreement, Blatt has and will sustain damages in an amount to be proven at trial and that exceeds the jurisdictional limits of this Court.

/ / /

/ / /

### SECOND CLAIM FOR RELIEF

**BREACH OF IMPLIED JOINT VENTURE / PARTNERSHIP AGREEMENT**

(Against All Defendants)

66.    Plaintiffs incorporate herein by reference paragraphs 1 through 65 of this complaint as set forth fully herein.

67.    Blatt entered into an implied-in-fact joint venture / partnership agreement with Defendants, as shown by their course of conduct, to manage and direct NOHO's foreign licensing and distribution and build NOHO into a successful brand in order to take it public in the United States.

68.    By working with Blatt to build NOHO's foreign sales and allowing him to utilize his contacts, skill and expertise to negotiate and close key foreign licensing and distribution deals in nine countries, Defendants were able to build NOHO into a successful worldwide brand and take it public.  Defendants were fully aware that Blatt performed these and other acts in furtherance of the joint venture / partnership agreement and the expectation of either a 5% non-dilutable interest or a 10 % founders' interest.

69.    At all times, Blatt performed all conditions, covenants, and promises required to be performed on his part in accordance with the terms of the joint venture / partnership agreement with Defendants, except to the extent his performance was excused or otherwise made impossible.

70.    Defendants breached the implied joint venture / partnership agreement by, among other things:

      a.    Failing to include Blatt in the dissolution, transfer and merger of the joint venture / partnership first to Dolce and then to NOHO;

      b.    Interfering in Blatt's ability to manage and direct foreign sales as agreed;

      c.    Misappropriating Blatt's contacts and strategies and reaping the benefits of Blatt's hard work and expertise for Defendants' benefit;

d.      Repudiating the existence of the joint venture / partnership, depriving Blatt of his rightful interest in the joint venture / partnership; and

e.      Failing to issue and wrongfully cancelling Blatt's shares in NOHO.

71.      As a direct and proximate cause of Defendants' breaches of the implied joint venture / partnership agreement, Blatt has and will sustain damages in an amount to be proven at trial and that exceeds the jurisdictional limits of this Court.

### THIRD CLAIM FOR RELIEF

### BREACH OF FIDUCIARY DUTY OWED TO JOINT VENTURERS / PARTNERS

(Against All Defendants)

72.      Plaintiffs incorporate herein by reference paragraphs 1 through 71 of this complaint as set forth fully herein.

73.      As described herein above, in or about June 2011, Blatt and Grdina entered into the valid oral Joint Venture Agreement and/or implied joint venture / partnership agreement for the purpose of directing and managing NOHO's foreign licensing and distribution and building NOHO into a successful brand in order to take it public in the United States.

74.      Defendants breached their fiduciary duties to Blatt, including the duties of loyalty, care, disclosure and good faith and fair dealing, by engaging in the acts and omissions alleged hereinabove.  Such acts and omissions include, but are not limited to:

a.      Failing to include Blatt in the dissolution, transfer and merger of the joint venture / partnership first to Dolce and then to NOHO;

b.      Interfering in Blatt's ability to manage and direct foreign sales as agreed;

c.      Misappropriating Blatt's contacts and strategies and reaping the benefits of Blatt's hard work and expertise for Defendants' benefit;

/ / /

/ / /

d.     Repudiating the existence of the joint venture / partnership, depriving Blatt of his rightful interest in the joint venture / partnership; and

e.     Failing to issue and wrongfully cancelling Blatt's shares in NOHO.

75.     As a direct and proximate cause of Defendants' breaches of their fiduciary duties, Blatt has and will sustain damages in an amount to be proven at trial and that exceeds the jurisdictional limits of this Court.

76.     By engaging in the conduct described herein, Defendants have wrongfully diverted the ownership interest, personal property, and assets of the joint venture / partnership to which Blatt is rightfully entitled.  Blatt respectfully request that such property be held by Defendants in constructive trust of Blatt.

77.     Blatt is informed and believes that the acts and omissions of Defendants described herein were done knowingly, willfully, maliciously, oppressively and fraudulently.  Therefore, Blatt is entitled to punitive and exemplary damages in an amount to be determined according to proof and that is appropriate to punish or set an example for Defendants.

## FOURTH CLAIM FOR RELIEF
### CONSTRUCTIVE FRAUD
(Against All Defendants)

78.     Plaintiffs incorporate herein by reference paragraphs 1 through 77 of this complaint as set forth fully herein.

79.     As described herein above, because Blatt and Grdina entered into a joint venture / partnership agreement and Blatt has an ownership interest in Dolce / NOHO, a fiduciary relationship existed between Blatt and Defendants.

80.     Defendants breached their fiduciary duties to Blatt, including the duties of loyalty, care, disclosure and good faith and fair dealing, by engaging in the acts and omissions alleged herein.  Among other things, Defendants fraudulently misrepresented that:

/ / /

a. Blatt would receive a 10% founders' interest in NOHO for coming on board to direct and manage NOHO's foreign sales and that Blatt's shares would be the same type / class as Grdina's shares, when Defendants never had any intention of honoring a 10% founders' interest in NOHO or Dolce or issuing shares of the same type / class as Grdina's as agreed; and

b. Blatt would receive a 5% non-dilutable interest in NOHO, in lieu of the 10% founders' interest, in order to induce Blatt to continuously direct and manage NOHO's foreign sales, when Defendants knew or should have known that Dolce / NOHO's shares were dilutable or would be made dilutable and that they never intended to issue Blatt a non-dilutable or any other interest in NOHO once it went public.

81. Blatt reasonably and justifiably relied on Defendants' fraudulent acts and omissions about the joint venture / partnership and his interest and role in NOHO. Blatt believed that he was partners with Defendants and that they would share in the profits / losses, ownership and control of NOHO, with Blatt directing and managing foreign sales and covering related expenses. Blatt turned down other real, lucrative opportunities, to enter into the joint venture / partnership with Defendants in reliance on Defendants' false statements and omissions and worked tirelessly to build NOHO into a worldwide brand and public company.

82. As a direct and proximate cause of Defendants' false statements and omissions in breach of their fiduciary duties to Blatt, Blatt has and will sustain damages in an amount to be proven at trial and that exceeds the jurisdictional limits of this Court.

83. Blatt is informed and believes that the acts and omissions of Defendants described herein were done knowingly, willfully, maliciously, oppressively and fraudulently. Therefore, Blatt is entitled to punitive and exemplary damages in an amount to be determined according to proof and that is appropriate to punish or set an example for Defendants.

/ / /

## FIFTH CLAIM FOR RELIEF

**BREACH OF CONTRACT – DISTRIBUTION AGREEMENT**

(Against All Defendants)

84.     Plaintiffs incorporate herein by reference paragraphs 1 through 83 of this complaint as set forth fully herein.

85.     As described herein above, on or about June 2011, TCB and Dolce entered into the valid, written Distribution Agreement, attached hereto as Exhibit A.  Therein, Dolce granted TCB the exclusive right to distribute, sell, license and otherwise deal in and exploit the use of all NOHO branded line of products in all territories worldwide, except the U.S. and Canada.  TCB was to use its best efforts to secure foreign licensing and distribution deals in exchange for a 15% percent commission on all international sales, a 10% commission for Canada sales, and 20% of all foreign licensing for manufacturing (not final products).  (Exhibit A, Article 4, ¶1).

86.     The initial term of the Distribution Agreement was three years, until June 1, 2014, with three successive three year option periods, renewable at the end of each term by the mutual consent of the parties.  The Distribution Agreement further provided that it "may only be terminated for cause if one party or the other fails to perform or observe any of the terms, covenant, or condition of this Agreement which the party is required to perform or observe after receiving written notice of the alleged default and having 45 days after the receipt of such notice to cure the alleged failure of performance."  (Exhibit A, Article 5, ¶5.01).

87.     In addition, the Distribution Agreement provided that it "shall be automatically transferred to, assumed by and enforceable against any person or entity that purchases, takes or receives all or substantially all of the business of Dolce or NOHO, its stock or ownership interests and/or the Dolce/NOHO drink and all its products."  (Exhibit A, Article 7, ¶4).  The Distribution Agreement is by its own terms enforceable against all Defendants.

/ / /

88.  Defendants and each of them have materially breached the Distribution Agreement by, among other things:

    a.  Failing to account to TCB for its commissions;

    b.  Failing to pay and wrongfully withholding TCB's commissions;

    c.  Failing and refusing to timely manufacture and deliver NOHO product in accordance with the foreign licensing and distribution deals secured by TCB;

    d.  Pursuing foreign licensing and distribution deals in TCB's exclusive territories;

    e.  Failing to disclose or give proper notice of the dissolution, transfer and merger of assets from Dolce Bevuto, LLC, first to Dolce and then to NOHO; and

    f.  Wrongfully terminating the Distribution Agreement in retaliation for Blatt's refusal to sign a "lock up" agreement that would have diminished his promised interest in NOHO.

89.  At all times, TCB performed all conditions, covenants, and promises required to be performed on its part in accordance with the terms of the Distribution Agreement, except to the extent its performance was excused or otherwise made impossible.

90.  Defendants and each of them, to this day, continue to refuse to honor the Distribution Agreement and fulfill their obligations thereunder.

91.  As a direct and proximate cause of Defendants' breaches of the Distribution Agreement, TCB has and will sustain damages in an amount to be proven at trial and that exceeds the jurisdictional limits of this Court.

## SIXTH CLAIM FOR RELIEF

### BREACH OF CONTRACT – MANUFACTURING AGREEMENT

(Against Dolce and NOHO)

92.  Plaintiffs incorporate herein by reference paragraphs 1 through 91 of this complaint as set forth fully herein.

/ / /

93.     As described herein above, in or about June 2011, Plaintiffs and Dolce entered into the valid, oral Manufacturing Agreement.

94.     Therein, Plaintiffs agreed to handle NOHO's manufacturing and domestic distribution operations, in addition to foreign distribution, as Grdina did not have NOHO set up to handle its growing manufacturing and distribution demands.  It was agreed that Defendants would pay for all manufacturing and domestic distribution costs and would compensate TCB's staff for their additional labor to handle these operations. In 2011, before NOHO had sufficient cash flow to cover expenses from sales, Plaintiffs received no additional compensation for these services.  In 2012, the parties agreed that Plaintiffs would be compensated $2,000 per month.  In 2013, the parties agreed to compensation of $8,000 per month.

95.     Defendants and each of them materially breached this agreement by, among other things, failing to pay and /or reimburse Plaintiffs for manufacturing and /or domestic distribution services and costs as agreed.  To this day, Defendants and each of them continue to fail and refuse to honor the Manufacturing Agreement and pay the $96,000 due for services rendered through in or about April 2013 and $6,000 for costs advanced and not reimbursed.

96.     At all times, Plaintiffs performed all conditions, covenants, and promises required to be performed on their part in accordance with the terms of the Manufacturing Agreement, except to the extent their performance was excused or otherwise made impossible.

97.     As a direct and proximate cause of Defendants' breaches of the Manufacturing Agreement, Plaintiffs have and will sustain damages in an amount to be proven at trial and that exceeds the jurisdictional limits of this Court.

/ / /

/ / /

/ / /

/ / /

## SEVENTH CLAIM FOR RELIEF

## BREACH OF IMPLIED CONTRACT

### (Against All Defendants)

98.    Plaintiffs incorporate herein by reference paragraphs 1 through 97 of this complaint as set forth fully herein.

99.    Plaintiffs entered into an implied-in-fact contract with Defendants, as shown by their course of conduct and communications, to handle NOHO's manufacturing and domestic distribution operations, in addition to foreign distribution.

100.   By requesting that Plaintiffs handle manufacturing and domestic distribution for NOHO and by promising Plaintiffs monthly compensation for these services, ultimately set at $2,000 per month in 2012 and $8,000 per month in 2013, Defendants and each of them manifested the intent to enter into a contract with Plaintiffs consistent with these terms.

101.   At all times, Plaintiffs performed all conditions, covenants, and promises required to be performed on their part in accordance with the terms of their agreement with Defendants, except to the extent their performance was excused or otherwise made impossible.

102.   Defendants and each of them materially breached this agreement by, among other things, failing to pay and /or reimburse Plaintiffs for manufacturing and /or domestic distribution services and costs as agreed.

103.   As a direct and proximate cause of Defendants' breaches of the Manufacturing Agreement, Plaintiffs and each of them have and will sustain damages in an amount to be proven at trial and that exceeds the jurisdictional limits of this Court.

/ / /

/ / /

/ / /

/ / /

## <u>EIGHTH CLAIM FOR RELIEF</u>

### PROMISSORY ESTOPPEL

(Against All Defendants)

104.   Plaintiffs incorporate herein by reference paragraphs 1 through 103 of this complaint as set forth fully herein.

105.   During 2011, Blatt committed to partnering with Grdina on his new hangover prevention drink, NOHO, acknowledged in communications between Blatt, Grdina and Stephenson, as well as by delivery of the Dolce LLC Certificate that purportedly reflects Plaintiffs' 5% non-dilutable interest in the NOHO venture.  In addition, TCB entered into the Distribution Agreement and Plaintiffs entered into the Manufacturing Agreement with Defendants in furtherance of the NOHO venture.  The parties' conduct and communications reflect clear and unambiguous promises to abide by the terms of the Joint Venture Agreement, Distribution Agreement and Manufacturing Agreement as alleged herein, specifically the transfer of a 5% non-dilutable interest in NOHO to Plaintiffs, TCB's foreign sales commissions and Plaintiffs' monthly manufacturing and domestic distribution compensation.

106.   In reasonable reliance upon Defendants promises, Plaintiffs immediately began diligently working, full-time, for NOHO as described herein.  Plaintiffs had to turn down other lucrative business opportunities in order to perform as agreed, in reliance on Defendants' promises.

107.   Plaintiffs' reliance on these terms was entirely foreseeable and reasonable and the parties performed in accordance therewith for some period of time before Defendants revealed their true, fraudulent intentions.  Indeed, Defendants strung Plaintiffs along for several months, purposely inducing them to continue closing key foreign distribution deals on NOHO's behalf, all while secretly scheming to deprive Plaintiffs of their interest in NOHO and TCB's agreed upon commissions and compensation.

/ / /

108.   Defendants breached their promises to Plaintiffs by, among other things, failing to compensate Plaintiffs as agreed under any of their agreements or as reasonable for the value of their services and wrongfully terminating the Distribution Agreement in bad faith.

109.   Plaintiffs were injured by their reasonable and justifiable reliance on Defendants' broken promises and wrongful conduct in an amount to be proven at trial and that exceeds the jurisdictional limits of this Court.

## NINTH CLAIM FOR RELIEF

### FRAUDULENT INDUCEMENT

(Against All Defendants)

110.   Plaintiffs incorporate herein by reference paragraphs 1 through 109 of this complaint as set forth fully herein.

111.   In or about June 2011, Defendants induced Plaintiffs to enter into the Joint Venture Agreement, Distribution Agreement and Manufacturing Agreement by making material misrepresentation to, and/or concealing or suppressing material facts from Plaintiffs.  In particular, Defendants, with the intent to induce Plaintiffs to rely on such misrepresentations and enter into a joint venture / partnership with them, perform work on Defendants' behalf, and forego other valuable business opportunities, fraudulently misrepresented to Plaintiffs that:

a.   Blatt would be a partner in the NOHO venture, managing and directing NOHO's foreign sales and covering related expenses;

b.   Blatt would receive either a 10% founders' interest or a 5% non-dilutable interest in NOHO in consideration of Blatt coming on board and making NOHO his priority while NOHO was unable to offer a salaried position;

c.   TCB would have exclusive distribution rights under the Distribution Agreement and be paid its commissions as set forth therein; and

d.   Plaintiffs would be additionally compensated for taking on NOHO's manufacturing and domestic distribution in addition to foreign sales.

112.   On information and belief, Defendants knew that their representations and assertions of fact were material and were false and misleading at the time they were made, or at a minimum, acted with reckless disregard for the truth or falsity of the representations and omissions.

113.   On information and belief, Defendants misrepresented, concealed, or suppressed the true facts with the intent to influence Plaintiffs to enter into the Joint Venture Agreement, Distribution Agreement and Manufacturing Agreement and forego other business opportunities for Defendants' benefit.

114.   Plaintiffs reasonably and justifiably relied on Defendants' misrepresentations and entered into the Joint Venture Agreement, Distribution Agreement and Manufacturing Agreement.

115.   At the time, Plaintiffs acted and agreed to the terms of these agreements, Plaintiffs were unaware of the concealed or suppressed facts and would have acted differently if Plaintiffs had known the true facts.

116.   Moreover, after Plaintiffs entered into the Joint Venture Agreement, Distribution Agreement and Manufacturing Agreement and began performing thereunder, Defendants made additional omissions of material facts to further induce Plaintiffs' reliance and continued work for the NOHO venture.  For example, Defendants failed to give any notice whatsoever of the dissolution of Dolce Bevuto, LLC or the transfer of its assets first to Dolce and then to NOHO.  In reality, this was a clear attempt by Defendants to secretly wipe out Plaintiffs' rights and interests in NOHO without disturbing the contributions they were continuing to make to NOHO. Defendants hid these material facts in an effort to conceal Defendants' nefarious scheme to deprive Plaintiffs of their rights and interests in NOHO.

117.   On information and belief, Defendants knew that their omissions were material and would mislead Plaintiffs at the time they concealed them, or, at a minimum, acted with reckless disregard for the truth or falsity of their representations.

/ / /

118.   As alleged above, Plaintiffs reasonably and justifiably relied on Defendants' misrepresentations and omissions and were unaware of the concealed or suppressed facts, and would have acted differently if Plaintiffs had known the true facts.

119.   As a result of Plaintiffs' reliance upon Defendants' misrepresentation and omissions, Plaintiffs have suffered damages in an amount to be proven at trial and that exceeds the jurisdictional limits of this Court.

120.   By engaging in the conduct described herein, Defendants have wrongfully diverted Plaintiffs' rights and interests in NOHO.  Plaintiffs respectfully request that such property be held by Defendants in constructive trust for Plaintiffs.

121.   Plaintiffs are informed and believe that the acts and omission of Defendants described herein were done knowingly, wilfully, maliciously, oppressively and fraudulently, and Plaintiffs are therefore entitled to punitive and exemplary damages in an amount to be obtained according to proof and that is appropriate to punish or set an example of Defendants.

## TENTH CLAIM FOR RELIEF

### PROMISSORY FRAUD

(Against All Defendants)

122.   Plaintiffs incorporate herein by reference paragraphs 1 through 121 of this complaint as set forth fully herein.

123.   In or about March 2011, Defendants made false promises to Plaintiffs to induce them into entering into the Joint Venture Agreement.  In particular, Defendants falsely promised that Blatt would receive either a 10% founders' interest or a 5% non-dilutable interest in the NOHO venture to direct and manage NOHO's foreign sales and cover his related expenses, in order to make NOHO successful and position it to go public.  Defendants made these false representations with the intent to induce Blatt's reliance and enter into a joint venture / partnership with Defendants, and perform work

/ / /

on Defendants' behalf and necessarily forego other valuable business opportunities to make NOHO his priority.

124.  On information and belief, Defendants never intended to fulfill their promises and knew that their promises were false and misleading at the time they were made, or at a minimum, acted with reckless disregard for the truth or falsity of the representations and omissions.

125.  On information and belief, Defendants made the false promise about Blatt's interest in NOHO with the intent to influence Blatt to enter in to the Joint Venture Agreement, forego other business opportunities and focus all of his resources on NOHO, which Blatt did, including bringing in his existing company TCB as NOHO's exclusive foreign distributor and agreeing to take on NOHO's manufacturing and domestic distribution for minimal compensation.

126.  Blatt reasonably and justifiably relied on Defendants' false promise and entered into the Joint Venture Agreement, the Distribution Agreement and the Manufacturing Agreement.

127.  At the time Blatt was completely unaware of the falsity of Defendants' promises and, had he known the true facts, that Defendants never intended to follow through on their promises, would have acted differently in his dealings with Defendants.

128.  After Blatt entered into the Joint Venture Agreement and started performing thereunder, Defendants made additional omissions of material facts to further induce Plaintiffs' reliance and continued work for the NOHO enterprise.  For example, Defendants failed to give any notice of the dissolution of Dolce Bevuto, LLC or the transfer of its assets first to Dolce and then to NOHO.  In reality, this was a clear attempt by Defendants to wipe out Plaintiffs' interest in Dolce and NOHO without Plaintiffs knowing, so as not to disturb the contributions they continued to make to NOHO.  Defendants hid this material fact in an effort to conceal Defendants' nefarious

/ / /

scheme to deprive Plaintiffs of their ownership interest in and management and control over NOHO.

129.   On information and belief, Defendants knew their false promise and omissions were material and would mislead Plaintiffs at the time they made or concealed them, or, at a minimum, acted with reckless disregard for the truth or falsity thereof.

130.   As alleged above, Plaintiffs reasonably and justifiably relied on Defendants' false promise and omissions and were unaware of the concealed or suppressed facts, and would have acted differently if Plaintiffs had known the true facts.

131.   As a result of Plaintiffs' reliance upon Defendants' false promise and omissions, Plaintiffs have suffered damages in an amount to be proven at trial and that exceeds the jurisdictional limits of this Court.

132.   By engaging in the conduct described herein, Defendants have wrongfully diverted the ownership shares, personal property and assets of NOHO / Dolce, to which Plaintiffs are rightfully entitled.  Plaintiffs respectfully request that such property be held by Defendants in constructive trust for Plaintiffs.

133.   Plaintiffs are informed and believe that the false promise and omissions of Defendants described herein were done knowingly, wilfully, maliciously, oppressively and fraudulently, and Plaintiffs are therefore entitled to punitive and exemplary damages in an amount to be obtained according to proof and that is appropriate to punish or set an example of Defendants.

## ELEVENTH CLAIM FOR RELIEF

### UNFAIR COMPETITION – VIOLATION OF

### BUS. & PROF. CODE §§ 17200 ET SEQ.

(Against All Defendants)

134.   Plaintiffs incorporate herein by reference paragraphs 1 through 133 of this complaint as set forth fully herein.

135.   Defendants' conduct as complained of hereinabove, constitute unfair and unlawful business practice in violation of Sections 17200, et seq. of the California Business and Professions Code, including, among other things:

      a.   Making fraudulent representations or omissions of material fact to induce Plaintiffs reliance, agreements and continued work for the NOHO enterprise, while secretly scheming to deprive them of their promised rights and interests when NOHO went public;

      b.   Failing to disclose to Plaintiffs the dissolution, transfer and merger of Dolce Bevuto LLC first to Dolce and then to NOHO;

      c.   Failing to properly account to TCB for its commissions;

      d.   Failing to pay and wrongfully withholding TCB's commissions under the Distribution Agreement;

      e.   Failing to pay and wrongfully withholding Plaintiff's compensation payments under the Manufacturing Agreement;

      f.   Failing to issue and wrongfully cancelling Blatt's shares in NOHO;

      g.   Repudiating the existence of the joint venture / partnership, depriving Blatt of his rightful interest in the joint venture / partnership; and

      h.   Wrongfully terminating the Joint Venture Agreement and Distribution Agreements in bad faith.

136.   Plaintiffs have been damaged and are entitled to restitution and preliminary and permanent injunctive relief preventing the continuance of Defendants' unfair and unlawful business practices described herein.

## TWELFTH CLAIM FOR RELIEF

### QUANTUM MERUIT

(Against All Defendants)

137.   Plaintiffs incorporate herein by reference paragraphs 1 through 136 of this complaint as set forth fully herein.

/ / /

138.   Blatt agreed to partner with Grdina on his new NOHO venture to direct and manage NOHO's foreign sales.  In furtherance of their joint venture / partnership TCB entered into the Distribution Agreement and Plaintiffs agreed to the Manufacturing Agreement.  Plaintiffs spent substantial time, labor and money identifying, negotiating, securing, directing and managing foreign distribution deals for NOHO, thereby rendering significant services to Defendants.  In addition, Plaintiffs spent substantial time, labor and money to manage and direct NOHO's manufacturing and domestic distribution operations.

139.   All of Plaintiffs' services rendered under each of the agreement were of a direct and substantial benefit to Defendants.

140.   Therefore, there is an agreement implied in law to pay Plaintiffs the reasonable value of their services rendered pursuant to the agreements alleged herein.

141.   Plaintiffs should be granted restitution as a result of Defendants' unjust enrichment in an amount to be proven at trial and that exceeds the jurisdictional limits of this Court.

## THIRTEENTH CLAIM FOR RELIEF

### ACCOUNTING

(Against All Defendants)

142.   Plaintiffs incorporate herein by reference paragraphs 1 through 141 of this complaint as set forth fully herein.

143.   The value of Plaintiffs' interest in NOHO and the amounts due to Plaintiffs under the Distribution Agreement for past and future commissions are unknown to Plaintiff and cannot be easily ascertained without an appropriate accounting from Defendants.  Plaintiffs seek an accounting from Defendants to determine and verify the amounts of these damages.

/ / /

/ / /

/ / /

## V.    RELIEF REQUESTED

WHEREFORE, Plaintiffs pray for judgment against Defendants and each of them as follows:

1.    For compensatory damages in excess of $75,000, the exact amount of which has yet to be ascertained, but is believed to be in excess of $5 million dollars;

2.    For interest to the extent permitted by law;

3.    For an award of exemplary and punitive damages in an amount to be proven at trial;

4.    For equitable relief, including but not limited to restitution and imposition of a constructive trust upon Defendants;

5.    For costs of suit herein, including attorneys' fees; and

6.    For such further relief that this Court deems just and proper.


DATED:  August 25, 2014              THE KAUFMAN LAW GROUP


                                     By:  /s/ Gary Jay Kaufman
                                        GARY JAY KAUFMAN
                                     Attorneys for Plaintiffs
                                     Todd Blatt and TCB Partnership

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs hereby demand a trial by jury on all issues triable by a jury in this action.


DATED:  August 25, 2014                    THE KAUFMAN LAW GROUP


                                           By:  /s/ Gary Jay Kaufman
                                               GARY JAY KAUFMAN
                                           Attorneys for Plaintiffs
                                           Todd Blatt and TCB Partnership